**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CONSTANTINO CARRERA,
        *Petitioner-Appellant,*

        v.

ROBERT L. AYERS, JR., Warden of
the California State Prison at San
Quentin,
        *Respondent-Appellee.*

No. 08-99007

D.C. No.
1:90-CV-00478-
AWI

OPINION

Appeal from the United States District Court
for the Eastern District of California
Anthony W. Ishii, Chief District Judge, Presiding

Argued and Submitted
June 14, 2010—San Francisco, California

Filed October 4, 2011

Before: Diarmuid F. O'Scannlain, A. Wallace Tashima, and
Carlos T. Bea, Circuit Judges.

Opinion by Judge Bea;
Dissent by Judge Tashima

## COUNSEL

Stephen B. Bedrick, Law Office of Stephen B. Bedrick, Oakland, California, for the petitioner-appellant.

Edmund G. Brown, Attorney General of California, Michael P. Farrell, Senior Assistant Attorney General, Harry Joseph Colombo, Supervising Deputy Attorney General, and Clifford E. Zall (argued), Deputy Attorney General, Sacramento, California, for the respondent-appellee.

## OPINION

BEA, Circuit Judge:

We must today decide whether defense counsel's failure in 1983 to object to a California prosecutor's allegedly group bias-based peremptory challenges constituted ineffective assistance of counsel, which ineffectiveness now requires a grant of federal habeas relief under the Sixth Amendment to the U.S. Constitution.

During the murder trial of Constantino Carrera, defense

counsel failed to object to the prosecutor's use of peremptory challenges to strike six Hispanic[1] venirepersons. Carrera appeals the district court's denial of his petition for a writ of habeas corpus based on defense counsel's claimed ineffective assistance of counsel.

We affirm the district court's denial of Carrera's ineffective assistance of counsel claim.[2] Petitioner failed to present evidence sufficient to overcome the strong presumption that counsel's performance was reasonable, as set out in *Strickland v. Washington*, 466 U.S. 668 (1984).[3]

I

Carrera, a Hispanic, was tried and convicted in 1983 for the robbery and first degree murder of Jack and Carol Hayes, managers of the Imperial 400 Motel in Mojave, California. Carrera was sentenced to death. The death sentence has since been invalidated.

---

[1]The term "Hispanic" is used to mean persons whose birth surnames derive from Spain, Portugal, or lands colonized by either. No particular racial characteristics are implied by the term.

[2]In a memorandum disposition filed concurrently with this opinion, we affirm the denial of the remainder of Carrera's claims.

[3]The district court erred when it concluded Carrera failed to show there was a "strong likelihood of discriminatory purpose," citing two California Court of Appeal cases which held that a *Wheeler* motion could not be successful if the prosecutor left two or three members of the cognizable group on the jury. *See Carrera v. Ayers*, 2008 WL 681842, at *26 (E.D. Cal. 2008) (citing *People v. Davis*, 234 Cal. Rptr. 859 (Ct. App. 1987); *People v. Boyd*, 212 Cal. Rptr. 873 (Ct. App. 1985)). These cases were not decided until two and four years *after* Carrera's trial in 1983; the district court should not have relied upon them. We must assess Carrera's trial counsel's performance "as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690. Nonetheless, "[w]e may affirm [the district court] on any basis supported by the record even if the district court did not rely on that basis." *United States v. Washington*, 969 F.2d 752, 755 (9th Cir. 1992) (internal quotation marks omitted). As shown below, we affirm on grounds the proof submitted does not demonstrate Carrera's defense counsel rendered deficient performance.

During jury selection, the prosecutor used peremptory challenges to strike six qualified[4] Hispanic prospective jurors. Two Hispanic jurors did sit on Carrera's jury; an additional Hispanic person served as an alternate juror. The prosecutor struck eleven out of forty-one similarly qualified white, non-Hispanic prospective jurors. The victims—the Hayes—were White, non-Hispanics. Defense counsel did not object. The Supreme Court of California affirmed Carrera's conviction. Carrera's state habeas petitions were denied by the Supreme Court of California without opinion.

Carrera filed an initial petition for habeas corpus in federal district court on July 31, 1990. The district court denied Carrera's ineffective assistance of counsel claim in an order on March 11, 2008.[5]

## II

We have jurisdiction over this appeal pursuant to 28 U.S.C. §§ 1291, 2253. This court reviews de novo a district court's decision to deny a petition for a writ of habeas corpus and reviews for clear error a district court's findings of fact. *Robinson v. Schriro*, 595 F.3d 1086, 1099 (9th Cir. 2010).

[1] The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") does not apply because Carrera filed his federal habeas petition before AEDPA's effective date; thus, pre-AEDPA law applies. *See id.* Under pre-AEDPA law, this court owes no deference to the state court's resolution of questions of law or mixed questions of law and fact. *Id.* Whether counsel rendered ineffective assistance of counsel is

---

[4]"Qualified" jurors are those jurors passed for cause.

[5]The long delay was due, in part, to Carrera exhausting some habeas corpus claims in state court. In 2004, the district court granted Carrera's motion for summary judgment on his claim that the jury's special circumstance findings resulted in a violation of his due process rights—as a result, Carrera became ineligible for the death penalty.

a mixed question of law and fact which we review de novo. *Id.* However, a state court's findings of fact are "entitled to a presumption of correctness unless they are not fairly supported by the record." *Clark v. Brown*, 450 F.3d 898, 904 (9th Cir. 2006) (internal quotation marks and citation omitted).

### III

The Sixth Amendment entitles criminal defendants to the "effective assistance of counsel." *Strickland*, 466 U.S. at 686 (internal quotation marks omitted). The Sixth Amendment's right to counsel has been incorporated into the Fourteenth Amendment, so as to apply to the states. *Gideon v. Wainwright*, 372 U.S. 335, 342 (1963). To establish ineffective assistance of counsel, a defendant must prove: (1) deficient performance—that is, his counsel's performance "fell below an objective standard of reasonableness," *Strickland*, 466 U.S. at 687-88; and (2) prejudice—that is, "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. "If we conclude that the petitioner fails to satisfy one of the *Strickland* prongs, we need not address the other." *Stanley v. Schriro*, 598 F.3d 612, 619 (9th Cir. 2010) (citing *Strickland*, 466 U.S. at 697). Because Carrera failed to carry his burden in proving his defense counsel's performance was deficient, we need not and do not address the prejudice prong.[6]

**[2]** "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010). To prove deficient performance, a defendant must prove that his counsel's performance "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. In evaluating whether counsel's performance was deficient, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The Court further stated:

---

[6]Similarly, we need not and do not address the dissent's contention that prejudice must be presumed under *Strickland* when counsel's alleged errors result in a structural error.

A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." *See Michel v. Louisiana*, [350 U.S. 91, 101 (1955)]. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

*Id.* Thus, *Strickland* places the burden on the defendant to overcome the "strong presumption" that counsel's performance was within the "wide range of reasonable professional assistance" and might be considered "sound trial strategy."

[3] Carrera's defense counsel's performance must be judged based on the law and prevailing legal standards as they existed at his trial in 1983. *Id.* at 690 ("[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."). *Batson v. Kentucky*, 476 U.S. 79 (1986), which held that the use of peremptory challenges to exclude jurors based solely on their race is a violation of the Equal Protection Clause of the Fourteenth Amendment, was not decided until three years after Carrera's trial. Although *Batson* applies retroactively to cases on direct review, *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987), it does not apply retroactively on federal habeas review, *Allen v. Hardy*, 478 U.S. 255, 260 (1986). Thus, *Batson* is inapplicable for the purpose of determining whether

trial counsel's performance in 1983 was deficient. Rather, the relevant question here is whether in California[7] in 1983 "[defense] counsel's representation fell below an objective standard of reasonableness" when she failed to make a *Wheeler*[8] motion to discharge the venire because of the prosecutor's claimed group-based peremptory challenges. *See Strickland*, 466 U.S. at 688.

**[4]** In *People v. Wheeler*, the Supreme Court of California held that "the use of peremptory challenges to remove prospective jurors on the sole ground of group bias violates the right to trial by a jury drawn from a representative cross-section of the community under . . . the California Constitution." 583 P.2d 748, 761-62 (Cal. 1978). Under *Wheeler*, courts begin with the presumption that "a party exercising a peremptory challenge is doing so on a constitutionally permissible ground." *Id.* at 762. A party who believes "his opponent is using his peremptory challenges to strike jurors on the ground of group bias alone" must first "make a prima facie case of such discrimination to the satisfaction of the court." *Id.* at 764. The challenging party "must establish that the persons excluded are members of a cognizable group" and "show a strong likelihood that such persons are being challenged because of their group association rather than because of any specific bias." *Id.* "[T]he party may show that his opponent has struck most or all of the members of the identified group from the venire, or has used a disproportionate number of his peremptories against the group." *Id.* Also relevant are (1) whether the defendant is a member of the excluded group, and (2) whether the victim is a member of the group to which the majority of the remaining jurors belong. *Id.* "If the court finds

---

[7]The deficiency requirement as to counsel's assistance, under *Strickland*, may be based on state law. *See Valdovinos v. McGrath*, 598 F.3d 568, 580 (9th Cir. 2010) ("Trial counsel's failure to object to evidence inadmissible under state law can constitute deficient performance under *Strickland*.").

[8]*People v. Wheeler*, 583 P.2d 748 (Cal. 1978).

that a prima facie case has been made, the burden shifts to the other party to show if he can that the peremptory challenges in question were not predicated on group bias alone." *Id.* at 764-65. "[T]he allegedly offending party must satisfy the court that he exercised such peremptories on grounds that were reasonably relevant to the particular case on trial or its parties or witnesses . . . ." *Id.* at 765. "If the court finds that the burden of justification is not sustained as to any of the questioned peremptory challenges, the presumption of their validity is rebutted." *Id.* Thus, a different venire is drawn and the jury selection process begins anew. *Id.*

IV

**[5]** Carrera contends his defense counsel was ineffective in failing to make a *Wheeler* motion in response to the prosecutor's peremptory challenges against six potential Hispanic jurors. Carrera must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Strickland*, 466 U.S. at 689. We emphasize that the initial question is *not* whether defense counsel would have succeeded had a *Wheeler* motion been made[9]—a reasonable attorney is not required to make every potentially meritorious motion. Instead, the question is whether reasonable counsel *might*[10] have declined to make a *Wheeler* motion under these circumstances. To this question, we answer in the affirmative.

Carrera has not carried his burden to prove defense counsel's performance was deficient. During state habeas proceed-

---

[9]We need not, and therefore do not, decide whether a *Wheeler* motion would have been successful.

[10]Put another way, whether failure to make the *Wheeler* motion "*might* be considered sound trial strategy," *Strickland*, 466 U.S. at 689 (emphasis added).

ings, defense counsel was asked: "Was there any strategic reason why a *Wheeler* motion was not made as to any or all of these seven prospective jurors [with Spanish surnames]?"[11] In response, defense counsel's declaration—executed over four years after jury selection took place in Carrera's trial— stated: "I don't know why at this time."[12] But, a review of the voir dire transcript demonstrates that, as to five of the six stricken Hispanic jurors, Carrera's counsel had good reason not to bring a *Wheeler* motion. Further, although the transcript does not reveal a specific justification for striking the sixth juror, it implies one; further, Carrera has failed to provide sufficient evidence to overcome the strong presumption in favor of counsel's conduct being reasonable.[13] Accordingly, Carrera has not overcome the presumption that his counsel performed competently.

### 1.  Juror Estrada

Juror Estrada was defense counsel's residential letter carrier. This personal acquaintance provided the prosecution with a valid reason to challenge Estrada, and a *Wheeler* motion by Carrera's counsel would have been pointless. Defense counsel's second declaration on state habeas so establishes.

---

[11]This question erroneously refers to seven, rather than six, prospective Hispanic jurors. During voir dire, Juror Torres explained that she was "white," and that her surname was her husband's last name. Thus, there were only six Hispanics stricken by the prosecution.

[12]During Carrera's state habeas proceedings, nearly five years after jury selection, the prosecutor submitted a declaration in which he stated he could not remember the reasons for his peremptory challenges, but that he was certain that he did not exercise the peremptory challenges based on racial grounds.

[13]Indeed, the district court reviewed the voir dire of each juror with a Hispanic surname and concluded that reasons independent of group bias supported each peremptory challenge. *Carrera v. Ayers*, No. 1:90-CV-00478-AWI, 2008 WL 681842, at *11-19, *27-29 (E.D. Cal. March 11, 2008).

## 2. Juror Garcia

Garcia initially told the trial judge she could not vote for the death penalty. This response provided the prosecution with a valid reason to remove this juror in a possible death penalty case; in California, the jury, not the judge, then and now decides whether to impose the death penalty. A *Wheeler* motion by defense counsel as to Garcia would have been futile.

In his comparative analysis,[14] Carrera contends that Garcia's equivocal answer as to whether she could vote for the death penalty was a pretext, as other non-Hispanic jurors gave similarly equivocal answers but were not stricken. Thomas Yale, Juror #9, was asked: "Could you consider the imposition of the death penalty?" Yale responded, "I believe I could, sir, yes." To the question "And do you believe in the death penalty, sir?" he answered "I don't like to take another life, but I guess under certain circumstances it is probably justified." Vincent Colaustro, an alternate juror, stated he was not opposed to the death penalty philosophically. To the question "Could you vote for [the death penalty]?" he responded, "That is a tough question, a very tough question," and a "tough decision." When asked "Some murderers may warrant the death penalty, don't you think?" Colaustro answered "It is hard for me to judge." The prosecutor accepted both Yale and Colaustro.

Carrera contends the answers from Yale and Colaustro are no less equivocal than Garcia's, and thus any contention that the prosecutor struck Garcia based on her equivocal answer

---

[14]In his brief, Carrera performs a comparative analysis as to four of the six stricken Hispanics in an effort to show the prosecution's peremptory challenges were based on group bias. A comparative analysis compares the questions to, and answers from, similarly situated jurors in an effort to uncover the actual motivations behind a peremptory challenge. *See generally Miller-El v. Dretke*, 545 U.S. 231 (2005).

was a pretext for group bias. This contention fails on the merits. Garcia was asked whether she could vote for the death penalty if she was "convinced that the death penalty should be imposed," and Garcia answered "No." When asked whether she could vote for the death penalty under any circumstances, she answered "No, I don't think so." When the judge asked whether Garcia could "think of a case where the crime for instance is so vicious that the death penalty should be imposed," Garcia finally answered "Well, yeah, in that case, yeah."

Garcia's answers were more unfavorable to the prosecution than either Yale's or Colaustro's answers. The prosecution would want to remove any juror who was unsure as to the death penalty; thus it was reasonable for defense counsel to decline to make a futile *Wheeler* motion.

### 3. Juror Celedon

Celedon, like Garcia, expressed doubt about being able to vote for the death penalty. To the question "[I]f after you have heard everything you feel the death penalty is the proper penalty, could you vote that way?" Celedon responded "I don't know." Moreover, as noted by the district court, Celedon seemed "bitter" about her presence on the venire, stating she had her mind on her work with her special education students. Doubt as to the use of the death penalty alone is sufficient to support a peremptory challenge; an attitude resentful of jury service also supports a peremptory challenge. Defense counsel could reasonably have believed that a *Wheeler* motion would fail.[15]

---

[15]Celedon gave equivocal answers as to whether she could vote for the death penalty, similar to the answers given by Colaustro—who was not stricken by the prosecutor. Carrera performs no comparative analysis as to Celedon. Moreover, Celedon's answers during voir dire made it clear she did not want to serve on Carrera's jury. This is a significant distinction which could cause the prosecutor to challenge Celedon over Colaustro.

*4.  Juror Hernandez*

Hernandez expressed a strong view towards the death pen-
alty, responding explicitly and unequivocally that she
believed in the death penalty. Also, Hernandez worked for the
probation department. Thus, *even if* defense counsel subjec-
tively believed the prosecution's peremptory challenge
against Hernandez was based on group bias, defense counsel
had good reason to allow a pro-death penalty juror to be
removed from the jury.

In his comparative analysis as to Juror Hernandez, Carrera
does not actually compare Hernandez's questions and answers
to any other juror. Instead, Carrera contends that Hernandez's
role as a "group counselor housekeeper" in the Kern County
probation department was a pretext for striking Hernandez
based on her Hispanic surname. Even accepting this conten-
tion as true, and assuming defense counsel reasonably
believed Hernandez was stricken for discriminatory reasons,
this does not prove defense counsel performed deficiently in
not bringing a *Wheeler* motion. As Carrera himself recog-
nizes, Hernandez affirmatively declared her support for the
death penalty—defense counsel would be happy to see Her-
nandez go. Thus, Carrera has not carried his burden in prov-
ing that any reasonable criminal defense attorney would have
made a *Wheeler* motion under these circumstances.

*5.  Juror Carrillo*

Carrillo, like Hernandez, expressed strong views in favor of
the use of the death penalty. Defense counsel would not be
sad to see Carrillo go, and thus was reasonable in not advanc-
ing a *Wheeler* motion.

In his comparative juror analysis, Carrera notes that the dis-
trict court stated there were two potential group bias-neutral
reasons for challenging Carrillo: (1) the arrest of Carrillo's
son at age 13-14, or (2) the prosecutor's alleged doubts about

Carrillo's ability to vote for the death penalty. Carrera contends neither of these reasons could support a group bias-neutral peremptory challenge.

As to her son's legal problems, Carrera accurately points to two other non-Hispanic jurors whose children had a criminal history, both of whom the prosecutor accepted. As to Carrillo's supposed inability to vote for the death penalty, Carrera contends "there was no evidence in the record to support" Carrillo's alleged opposition to the death penalty. But this actually proves that defense counsel was not ineffective in failing to raise a *Wheeler* motion. Even if defense counsel believed the prosecutor's peremptory challenge was based on Carrillo being Hispanic, Carrera cannot show that counsel acted incompetently by failing to raise a *Wheeler* motion in response to a peremptory challenge of an unfavorable, pro-death penalty juror.

### 6. *Juror Martinez*

The sixth stricken Hispanic juror, Martinez, did not say anything particularly favorable to either the prosecution or the defense. The district court found that Martinez's disability, and the 30-mile drive from his home to the courthouse, "could give rise to concern over daily punctuality."

In his comparative analysis, Carrera contends these purported group bias-neutral reasons could not have formed the basis of the prosecutor's peremptory challenge. Although Martinez was never questioned about the type of disability to which he was subject, or how it would affect his potential service as a juror, he did state that he had been a truck driver, but had been disabled from that work since 1976—for 7 years by the time of trial. Martinez's commute from Delano to court in Fresno was 30 miles. Another potential juror (Juror Allen) had a longer commute than Martinez and said the commute would "cause a problem," whereas Martinez said his commute would not be difficult. There was nothing to show Allen

was in any way disabled. Allen became a juror in Carrera's trial.

Carrera contends that had a *Wheeler* motion been made, this evidence would tend to suggest the prosecutor's peremptory was based on group bias. However, the question we face is one step removed: Was defense counsel deficient to either (1) believe a *Wheeler* motion would fail because the prosecutor could come up with a race-neutral reason to challenge Martinez, or (2) decide she was happy the prosecutor struck Juror Martinez?

Martinez presented with a combination of facts which imply a race-neutral reason for the prosecutor to have excused him. First, Martinez had a long-standing disability, of seven years' duration. Second, this disability had invalidated him from his work—truck driving. Third, his commute from Delano to the Fresno courthouse was 30 miles long. The description of this disability may have been obvious in the courtroom, but was left undescribed in the record. One explanation that comes to mind for the prosecutor's decision to excuse Martinez: the prosecutor wanted to ingratiate himself with the remaining jurors by relieving the disabled Martinez from sitting on a long jury trial.

However, this does not end the inquiry. There are reasons for striking a potential juror that would not show up in a trial transcript. *See, e.g.*, *Rice v. Collins*, 546 U.S. 333, 341 (2006) (holding that "eye rolling" and "youthfulness" were permissible grounds for exercising a peremptory challenge). Any number of reasons for striking Juror Martinez may have been apparent to every person in the courtroom, yet unavailable to one reading the transcript of voir dire. But it is *Carrera* who has the burden of showing defense counsel was deficient in failing to bring a *Wheeler* motion in response to the prosecutor's peremptories. On this record, Carrera has failed to carry his burden.

**[6]** Indeed, during state habeas proceedings, the prosecutor declared there were race bias-neutral reasons for striking each Hispanic juror. The prosecutor declared that, although, understandably, he could not remember nearly five years later his reason for striking each juror he had "specific reasons justifying each of [his] challenges not based on race." The prosecutor further declared:

> I believed the crimes Constantino Carrera committed were so brutal and senseless that any responsible juror would hold Carrera responsible if I proved my case. I thought responsible Hispanic jurors would be very good jurors, as they would not tolerate such lawless, senseless, brutal and vicious conduct and would be particularly interested in holding Carrera responsible for his actions.

Specifically, the prosecutor declared: "I know I didn't kick off any jurors just because they were Hispanic. Race was never a cause for me to excuse any juror." This declaration provides some evidence of the fact that—although five years later he could not detail them—the prosecutor had group bias-neutral reasons for his exercising peremptory challenges against each of the six Hispanic jurors, and therefore that defense counsel was reasonable in not making a *Wheeler* motion.

Further, this court's jurisprudence demonstrates the high level of deference given to counsel's decisions during jury selection. In *United States v. Quintero-Barraza*, 78 F.3d 1344 (9th Cir. 1995), Quintero-Barraza contended, on direct appeal, that counsel was ineffective for failing to strike a potentially biased juror. *Id.* at 1349. During voir dire in Quintero-Barraza's criminal trial, prospective juror David Miller, a criminal justice student, stated his belief that one is guilty until proven innocent. *Id.* He also stated that it would be "difficult" for him to be impartial. *Id.* Counsel did not strike Miller; instead, he expressed his admiration for Miller's

truthfulness: "I was impressed with him. I thought he gave a very candid answer." *Id.* at 1349 & n.4. This court held:

> Counsel's actions in this regard pose a more difficult question for this Court. It is manifest, however, that he was making a tactical decision in declining to strike Miller. Counsel appears to have concluded that because Miller was honest about his pretrial views, he would also honestly apply the law as outlined in the judge's instructions. Under *Strickland*, our review of this tactical decision "must be highly deferential," and we must accord the decision "a strong presumption" of validity, regardless of whether we agree with it. We are not persuaded that appellant has overcome that strong presumption.

*Id.* (citation to *Strickland* omitted).

In *Fields v. Woodford*, 309 F.3d 1095 (9th Cir. 2002), Fields appealed the district court's summary judgment of his habeas petition. *Id.* at 1097-98. Fields contended "his counsel rendered ineffective assistance by failing to conduct meaningful voir dire, specifically, by failing to question at all [beyond the questions asked by the court] six of the jurors who were ultimately empaneled." *Id.* at 1107. Fields further contended that competent counsel, given potential juror Hillard's equivocal answer as to impartiality due to an assault against Hillard's wife, "would have questioned him further about the incident, challenged him for cause, and if that challenge were denied, exercised a peremptory challenge to remove him from the jury." *Id.* This court stated:

> Whether counsel was deficient is a close call. On the one hand, it is tough to imagine why he did not pursue what kind of assault Hilliard's wife suffered, given that the non-capital charges against Fields included rape. On the other hand, it may be that he decided not to emphasize Fields's behavior through

additional questioning, or that counsel believed Hilliard's statement that he could base his decision strictly on the evidence despite his wife's experience. At oral argument the state suggested another possibility: that counsel may have wanted to keep Hilliard on the jury because he was African-American.

*Id.* at 1108. This court concluded it could "not say that failure to inquire beyond the court's voir dire was outside the range of reasonable strategic choice." *Id.*

In *Hovey v. Ayers*, 458 F.3d 892 (9th Cir. 2006), Hovey appealed the district court's denial of his petition for a writ of habeas corpus. *Id.* at 897. One of Hovey's claims was that counsel's voir dire was so perfunctory that counsel failed to protect Hovey's rights to an impartial jury. *Id.* at 909. Specifically, Hovey contended that "counsel should have questioned potential jurors on both the widespread pretrial publicity and Hovey's decision not to testify." *Id.* at 910. This court rejected the claim. *Id.* This court stated that "[t]he conduct of voir dire 'will in most instances involve the exercise of a judgment which should be left to competent defense counsel.'" *Id.* (quoting *Gustave v. United States*, 627 F.2d 901, 906 (9th Cir. 1980)). Counsel testified that he believed the least voir dire to be the best tactic, explaining that he preferred to rely on "nonverbal communication." *Id.* Thus, this court held counsel's performance was not deficient under *Strickland*. *Id.*

**[7]** Similarly here, Carrera has not overcome the strong presumption that defense counsel's decision not to challenge the prosecutor's peremptory challenges was strategic. There are many reasons why an attorney may strike a juror. *See, e.g.*, *Felkner v. Jackson*, 562 U.S. ___ (2011) (per curiam) (holding that perceived racial harassment by police and educational background were permissible grounds for exercising peremptory challenges); *Rice*, 546 U.S. at 341 (holding that

"eye rolling" and "youthfulness" were permissible grounds for exercising a peremptory challenge). Further, there are many reasons why defense counsel may have supported the removal of the Hispanics struck by the prosecutor. Indeed, defense counsel may have been pleased with the resulting jury, despite the fact that the prosecutor had removed several Hispanic venirepersons. Moreover, when the prosecutor peremptorily challenged each Hispanic, defense counsel may have made a split-second decision that the challenge was on a permissible, bias-neutral ground, and that a *Wheeler* motion would therefore be futile. Carrera does not address these possibilities. The only evidence Carrera has proffered in support of the assertion that defense counsel was ineffective in not making a *Wheeler* motion is the declaration of an expert, who was not present at voir dire to observe the demeanor or appearance of the prospective jurors and did not even review any part of the voir dire transcript. This court has previously rejected similar (and stronger) evidence as unpersuasive. *See Paradis v. Arave*, 954 F.2d 1483, 1491 (9th Cir. 1992) (rejecting an attorney's testimony in support of habeas petitioner's ineffective assistance of counsel claim because the attorney was not present to observe the demeanor of jurors and reviewed voir dire of only the jurors ultimately empaneled), *rev'd on other grounds*, 507 U.S. 1026 (1993).

Judge Tashima, in dissent, contends that defense counsel's failure to make a *Wheeler* motion was deficient performance. Respectfully, the dissent errs in three significant ways. First, the dissent focuses on whether defense counsel could establish a prima facie case under *Wheeler*, while largely ignoring *Wheeler*'s second step—the prosecutor's opportunity to respond with a group bias-neutral reason for exercising the peremptory challenge. Even if we were to assume a prima facie case could have been made, a group bias-neutral reason for exercising a peremptory challenge would defeat a *Wheeler* motion, and the presence of such a reason could cause a reasonable defense attorney under the circumstances to decline

to make a *Wheeler* motion.[16] The group bias-neutral reasons defense counsel could have anticipated would be forthcoming are set forth above as to each venireperson struck.

Second, the dissent employs the "smell test" summarily to conclude that "a reasonable attorney in the same circumstances would have objected." Dissent at 18738. However, it is not clear why this is so. To the extent the dissent concludes a reasonable attorney should have made a *Wheeler* motion based solely on the percentage of each race that was challenged by the prosecutor, this ironically reinforces the very racial stereotypes that *Wheeler* and *Batson* were meant to prevent. *See Batson*, 476 U.S. at 89 ("[T]he Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant."); *see also Powers v. Ohio*, 499 U.S. 400, 410 (1991) ("A person's race simply is unrelated to his fitness as a juror. We may not accept as a defense to racial discrimination the very stereotype the law condemns." (internal quotation marks and citation omitted)).

**[8]** Further, the dissent brushes aside as irrelevant the possibility that defense counsel was pleased with the resulting jury.[17] It also mistakes the role of defense counsel. Defense

---

[16]The dissent points out that the prosecutor failed—almost five years after jury selection—to remember the reasons he struck the Hispanic jurors in this case. Dissent at 18734 n.2. Contrary to the dissent's contention, however, the prosecutor's failure to remember does not mean that no group bias-neutral reasons existed. Indeed, the prosecutor declared under penalty of perjury that he had group bias-neutral reasons at the time, and could have explained them had a *Wheeler* motion been made. *See supra* page 18726.

[17]The dissent ignores the record to conclude that "trial counsel's failure to make a *Wheeler* motion was not based on trial strategy." Dissent at 18737. During state habeas proceedings, defense counsel testified she did not know why she failed to make a *Wheeler* motion "at this time"—that is, at the time of her declaration over four years after jury selection. This implies that there *was* a reason defense counsel did not make a *Wheeler* motion, but that she could not remember it due to the passage of time.

counsel's duty is to represent her client with zeal and vigor in an effort to acquit her client of the charged counts. It is not deficient performance to decline to move to strike a jury that defense counsel believes gives her client the best chances of being acquitted—even if defense counsel is *convinced* the prosecutor exercised his peremptory challenges in an impermissible manner. As discussed in depth above, a potential juror who is in favor of the death penalty is a bad juror for a death-penalty-eligible defendant, even if the defendant and that juror happen both to be Hispanic. Thus, defense counsel would be reasonable in failing to make a *Wheeler* motion, and to require counsel to object to the jury under these circumstances would be to require counsel to put the interests of her client second. This we cannot hold.

**[9]** Lastly, the dissent is misguided in concluding that under these circumstances, a reasonable attorney would have at least "developed the record." Dissent at 18738. This phrase, "develop a record," is often found in proceedings such as habeas corpus hearings or civil depositions, where evidence can be introduced by question and answer. This phrase sounds as if it is something every reasonably proficient attorney can and should do, but the dissent overlooks one thing: the only way to "develop a record" as to group or race bias in jury selection is to *make* a *Wheeler* motion. This forces the prosecutor to justify the peremptory challenge, and if the prosecutor fails to provide a reasonable group bias-neutral justification, the *whole jury* is replaced. *Wheeler*, 583 P.2d at 765 (holding that the remedy for a successful *Wheeler* motion is that "a different venire shall be drawn and the jury selection process may begin anew"). Thus, to "develop a record," defense counsel would have to risk losing a jury from which several pro-death penalty jurors had been stricken. If a new panel resulted in seating more pro-death penalty jurors, would the dissent be prepared to hold the *Wheeler/Batson* challenge was ineffective assistance of counsel? To incur the risk of losing a fairly good jury would not seem to be "reasonable representation," and surely is not required under *Strickland*.

V

**[10]** At the end of the day, this case comes down to Carrera's failure to carry his burden of proof so as to overcome the presumption this court has cited. *Strickland* requires that the panel "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Strickland*, 466 U.S. at 689. Not "must," not "would," but "might." Based on the tactical nature of jury selection, the presence of *some* reasons for not bringing *Wheeler* motions to challenge the prosecutor's peremptory challenges of these specific jurors, and the dearth of evidence Carrera provided to overcome the strong presumption in favor of defense counsel's reasonableness— Carrera presented only a deposition from an expert who neither witnessed voir dire to observe the demeanor of the attorneys and jurors involved, nor even reviewed any part of the voir dire transcript—Carrera's *Strickland* claim must be denied.

**AFFIRMED.**

---

TASHIMA, Circuit Judge, dissenting:

Constantino Carrera, who is Hispanic, was tried and convicted in 1983 of the double murder of a white couple in Kern County, California. In the course of jury selection, the prosecutor exercised the State's peremptory challenges against six of eight Hispanic venire persons. Although *People v. Wheeler*, 583 P.2d 748 (Cal. 1978), had been the law in California for five years, defense counsel did not raise a *Wheeler* challenge against the prosecution's highly disproportionate use of its peremptory challenges to excuse 75 percent of Hispanic venire persons who were called. Because, in failing to object

and failing to develop the record, Carrera's trial counsel ignored an obvious *prima facie* case that the prosecutor was using his peremptory challenges disproportionately to strike Hispanic jurors in violation of *Wheeler*, I respectfully dissent from the majority's denial of the writ.[1] Because this deficient performance resulted in a structural error, prejudice must be presumed. Accordingly, I would grant Carrera habeas relief.

## I

Carrera has overcome the "strong presumption" that his trial counsel's failure to object was "sound trial strategy." *Strickland v. Washington*, 466 U.S. 668, 689 (1984). Trial counsel could not offer any reason or explanation for her failure to make a *Wheeler* challenge. In these circumstances, Carrera has established that his trial counsel failed properly to develop the record and to object where there was an obvious *prima facie* case of the biased use of peremptory challenges. This was not "sound trial strategy" — insofar as the record shows, it was no strategy at all — nor does it fall within the "wide range of reasonable professional assistance." *Id.*

---

[1]Although the district court conducted a careful review of the *voir dire* of the eight Hispanic jurors, as the majority recognizes, Maj. Op. at 18714 n.3, the district court erred in its *Wheeler* analysis. The district court concluded that Carrera failed to show that there was a "strong likelihood of discriminatory purpose," citing two California Court of Appeal cases which held that a *Wheeler* motion could not be successful if the prosecutor left two or three members of the cognizable group on the jury. *See Carrera v. Ayers*, 2008 WL 681842, at *26 (E.D. Cal. 2008) (citing *People v. Davis*, 234 Cal. Rptr. 859 (Ct. App. 1987); *People v. Boyd*, 212 Cal. Rptr. 873 (Ct. App. 1985)). But these cases were not decided until two and four years *after* Carrera's trial in 1983, so they could not have been the law in California at the time of Carrera's trial. Moreover, these cases were quickly overruled by the California Supreme Court. *See People v. Snow*, 746 P.2d 452 (Cal. 1987). Thus, although the district court acknowledged that, under *Strickland*, it was required to assess Carrera's trial counsel's "performance in the context of what the applicable law was at the time of Carrera's trial," it nevertheless erred by evaluating counsel's effectiveness on the basis of case law that was not the law of California at the time of Carrera's trial.

Under *Wheeler,* a party may establish a *prima facie* case of the discriminatory use of peremptory challenges by "show-[ing] that his opponent has struck most or all of the members of the identified group from the venire, or has used a dispro-portionate number of his peremptories against the group." 583 P.2d at 764. This statistical evidence is bolstered if, as is the case here: (1) the defendant is a member of the excluded group; and (2) the victim is a member of the group to which the majority of remaining jurors belong. *Id.*

Had she objected, Carrera's trial counsel clearly could have made a *prima facie* case that the prosecutor used his peremp-tory challenges to eliminate "members of a cognizable group": Hispanics. The prosecution used its peremptory chal-lenges to strike 75 percent of potential Hispanic jurors and only 27 percent of the potential non-Hispanic white jurors. Carrera is Hispanic. The victims were white. This is a *prima facie* case of bias under *Wheeler.*

Was the fairness of Carrera's trial compromised because the prosecutor used his peremptory challenges to strike most of the Hispanic potential jurors on the basis of group bias? Of course, we will never know the answer. Because Carrera's trial counsel failed to object, the prosecutor never had to jus-tify his peremptory challenges.[2] Indeed, Carrera's counsel failed even to make a record, so there is little to indicate what the prosecutor's "group bias"-neutral reasons may have been, if any, for striking the potential Hispanic jurors.[3] This is not

---

[2]Tellingly, when asked in post-trial proceedings, the prosecutor could not recall his reasons for striking five of the six potential Hispanic jurors, although he denied that his actions were racially motivated. This gives rise to a reasonable inference that there was no apparent reason, other than group bias, to challenge them.

[3]Trial counsel's failure even to make a record on the dismissal of the potential Hispanic jurors, particularly potential juror Martinez, was defi-cient performance. *See Wheeler*, 583 P.2d at 764 (explaining that a party who suspects his opponent is striking potential jurors based on group bias "should make as complete a record of the circumstances as is feasible").

the sort of small, inevitable trial error which led the Supreme Court to observe, "A defendant is entitled to a fair trial but not a perfect one." *Lutwak v. United States*, 344 U.S. 604, 619 (1953). Rather, it is the kind of fundamental error that calls into question the basic fairness of the trial mechanism itself. It cannot, and should not, be explained away by speculation on what possible reasons might have motivated either the prosecutor or defense counsel.

In the absence of any record evidence to support its position, the majority searches for snippets in the *voir dire* transcript to justify that which, *prima facie*, appears motivated by bias. "But it does not matter that the prosecutor might have had good reasons to strike the prospective jurors. What matters is the *real* reason they were stricken." *Paulino v. Castro*, 371 F.3d 1083, 1090 (9th Cir. 2004).[4] The majority engages in exactly the kind of "judicial speculation" of which the Supreme Court expressly disapproves. *See Johnson v. California*, 545 U.S. 162, 173 (2005) (criticizing "the imprecision of relying on judicial speculation to resolve plausible claims of discrimination"). The majority fails to explain why it is appropriate, on habeas review, to do exactly what trial courts have been instructed they absolutely may not do: speculate about the prosecutor's reasons for striking potential jurors who belong to a cognizable group.[5]

Critically, *Wheeler* does not require the removal of a specific number or percentage of the targeted group in order to establish a *prima facie* violation. *See* 583 P.2d at 764 (explaining that a party can make a *prima facie* case by

---

[4]As the majority notes, Maj. Op. at 18715, this is a pre-AEDPA case.

[5]This differs from the legitimate use of comparative juror analysis, which takes place at the third step of a *Wheeler* or *Batson* challenge, *after* the prosecution proffers bias-neutral reasons for striking members of a cognizable group. *See Lewis v. Lewis*, 321 F.3d 824, 830-31 (9th Cir. 2003) (explaining that the court may review the *voir dire* record to determine whether the prosecutor's proffered reasons are credible or pretextual); *Wheeler*, 583 P.2d at 765.

"show[ing] that his opponent has struck *most* or all of the members of the identified group from the venire") (emphasis added). A violation occurs, and a new jury must be drawn, if even a single peremptory was based on group-bias. *See id.* at 765. As the California Supreme Court stated:

> If the court finds that the burden of justification is not sustained as to *any* of the questioned peremptory challenges, the presumption of their validity is rebutted. Accordingly, the court must then conclude that the jury as constituted fails to comply with the representative cross-section requirement, and it must dismiss the jurors thus far selected. So too it must quash any remaining venire, since the complaining party is entitled to a random draw from an entire venire — not one that has been *partially* or totally stripped of members of a cognizable group by the improper use of peremptory challenges. Upon such dismissal a different venire shall be drawn and the jury selection process may begin anew.

*Id.* (emphases added). Accordingly, the absence of a "group bias"-neutral reason for striking even *one* potential juror constitutes a *Wheeler* violation.

The record does not support the majority's conclusion that there were reasons neutral of "group bias" to strike all six of the Hispanic potential jurors, and that such reasons were so obvious or apparent as to excuse trial counsel from making a *Wheeler* motion. The majority admits that, even under its speculative review of the record, there was no obvious reason for striking potential juror Martinez. When one compares the *voir dire* responses of Martinez (who was struck) and Allen (a non-Hispanic white juror who was not struck), no obvious, permissible reason emerges for striking one and not the other, both of whom lived at least thirty miles from the courthouse.

The majority speculates that Martinez was excused because he was disabled, even while admitting that the record does not disclose what his disability was. Maj. Op. at 18725. The majority so speculates in spite of the fact that Martinez was qualified to serve.[6] *See* Maj. Op. at 18715 & n.4.

Indeed, a closer look at the *voir dire* of Allen reveals the folly of the majority's approach of parsing the record to construct hypothetical reasons for dismissing or not dismissing potential jurors. Asked whether he was familiar with the case, Allen stated that he "heard it in the newspapers" and he had co-workers who lived at the Imperial Motel where the murders took place. If Mr. Allen had instead been "Mr. Allende," and subject to a peremptory challenge by the prosecution, the majority would have concluded that the dismissal was "group bias"-neutral because the potential juror was familiar with the case and the scene of the crime.

Importantly, trial counsel's failure to make a *Wheeler* motion was not based on trial strategy. *See Strickland*, 466 U.S. at 689. During state habeas proceedings, Carrera's trial counsel testified that she did not know why she failed to make a *Wheeler* motion during *voir dire*. Indeed, she has never articulated a strategic reason for failing to make a *Wheeler* motion.

Of course, trial counsel's utter failure to present a reasonable explanation for her failure to object would be of no moment if it fell "within the range of reasonable representation." *See Morris v. California*, 966 F.2d 448, 456 (9th Cir.

---

[6]There is no end to the majority's speculation. Its own speculation would have the prosecutor use his peremptory strikes in a manner contrary to law: "[T]he prosecutor wanted to ingratiate himself with the remaining jurors by relieving the disabled Martinez from sitting on a long jury trial." Maj. Op. at 18725. But it has been well-established for many years that the law forbids discriminating against the disabled in jury service. *See, e.g., Greater L.A. Council on Deafness, Inc. v. Zolin*, 812 F.2d 1103 (9th Cir. 1985).

1991) (relying on defense counsel's explanation that his decision not to call a certain witness "was a tactical one," made to avoid linking the defendant "to prior involvement with cocaine"). It does not. In spite of the majority's hypothetical musings, no professional strategic decision can be discerned for trial counsel's failure to object to the disproportionate striking of Hispanic potential jurors. It is telling that the State does not even attempt to find "group bias"-neutral reasons in the record, and the majority's concluding speculation is only that Carrera's "counsel may have been pleased with the resulting jury." Maj. Op. at 18729. *See also* Maj. Op. at 18730 (stating the "possibility that defense counsel was pleased with the resulting jury").

Given that the defendant was Hispanic and the victims were white, Carrera's lawyer should have picked up on the prosecutor's apparent attempt to skew the jury. It does not take an expert to conclude that something is fishy — it simply does not pass the smell test — when a prosecutor strikes 75 percent of Hispanics on a jury and only 27 percent of non-Hispanic whites. The majority speculates that "defense counsel may have been pleased with the resulting jury, despite the fact that the prosecutor had removed several Hispanic venirepersons." Maj. Op. at 18729. She may have been "pleased" (although the majority does not say why she, or any reasonable attorney, would have been), but that is not the question. The question is whether a reasonable attorney in the same circumstances would have objected. Any reasonable attorney would have done so. At the very least, a reasonable attorney would have developed the record. Accordingly, the failure to bring a *Wheeler* motion constituted deficient performance.[7]

_____

[7]The majority cites three completely inapposite cases in an attempt to bolster its conclusion that Carrera's trial counsel's performance was not deficient. None of these cases deals with a defense attorney's failure to monitor the prosecutor's *voir dire* for signs of group bias. Rather, each of the cases cited by the majority deals with ineffective assistance of counsel

## II

We have held that the discriminatory use of peremptory challenges, known in federal law as *Batson* error,[8] is a structural error, rather than trial error, that requires reversal. *E.g., Kesser v. Cambra*, 465 F.3d 351 (9th Cir. 2006) (en banc). The discriminatory use of peremptory challenges is not

claims premised on the defense attorney's failure to challenge a single, possibly biased juror or to ask more questions during *voir dire*. First, the majority relies on *United States v. Quintero-Barraza*, 78 F.3d 1344 (9th Cir. 1995), for the proposition that this court defers to counsel's decisions during jury selection. Maj. Op. at 18726-27. In fact, we held that we must be "highly deferential" where trial counsel makes a *tactical decision* in jury selection whether to challenge a potential juror on the ground of bias. 78 F.3d at 1349. We therefore rejected Quintero-Barraza's ineffective assistance of counsel claim premised on defense counsel's failure to strike a single juror where counsel explained that he considered the juror to be honest and impressive, notwithstanding the juror's statement that he would find it difficult to be impartial. *Id.* Second, the majority cites *Fields v. Woodford*, 309 F.3d 1095 (9th Cir. 2002). Maj. Op. at 18727-28. *Fields* was decided on the ground of absence of prejudice. *Id.* at 1107-08 (remanding for findings on the possible bias of a single juror but declining to conclude that the defendant's counsel was ineffective for failing to question other jurors who did not appear possibly biased on the record, and so could not have prejudiced the result). Finally, the majority relies on *Hovey v. Ayers*, 458 F.3d 892 (9th Cir. 2006), *see* Maj. Op. at 18728, in which we held that defense counsel was not deficient where his limited questioning during *voir dire* was reasonably explained as a tactical decision to not remind the jurors of publicity the case had received four years before the trial. *Id.* at 910.

Here, Carrera does not question how his trial counsel exercised her own peremptory challenges or her questioning of potential jurors. Instead, he challenges his trial counsel's utter failure to object to the facially discriminatory manner in which the prosecutor exercised his peremptory challenges. Most importantly, unlike the cases relied on by the majority, there is no evidence in the record that Carrera's trial counsel had any tactical reason for her failure to act in the face of a *prima facie* case of group bias. We cannot be "highly deferential" to a tactical decision that does not exist in the record and, indeed, one trial counsel herself admits she never made.

[8]*See Batson v. Kentucky*, 476 U.S. 79 (1986).

merely a trial error which can be weighed in the context of other admitted evidence; it is a defect in the trial mechanism. Thus, I would hold that *Wheeler* error, like *Batson* error, is structural error, and prejudice must be presumed. *See Arizona v. Fulminante*, 499 U.S. 279, 309-10 (1991) (explaining that unlike a trial error, structural errors require reversal because they "affect[ ] the framework within which the trial proceeds, rather than simply an error in the trial process itself").

Where ineffective assistance of counsel results in a structural error, prejudice must be presumed. *See Owens v. United States*, 483 F.3d 48, 64 n.14 (1st Cir. 2007) (presuming prejudice where ineffective assistance of counsel led to a closed trial, explaining that "prejudice is presumed in cases of structural error not because the risk of prejudice is high, but because it is impossible to determine the extent of the prejudice"); *see also McGurk v. Stenberg*, 163 F.3d 470, 475 (8th Cir. 1998) ("[W]hen counsel's deficient performance causes a structural error, we will presume prejudice under *Strickland*."); *Gov't of Virgin Islands v. Forte*, 865 F.2d 59, 63-64 (3d Cir. 1989). These cases recognize that structural error exists because, in certain cases, prejudice is impossible to quantify. It hardly makes sense to require a petitioner "to do what the Supreme Court has said is impossible." *Owens*, 483 F.3d at 65.

This is particularly true with respect to a *Wheeler* or *Batson* error. *See Powers v. Ohio*, 499 U.S. 400, 412 (1991) ("Active discrimination by a prosecutor during [jury selection] condones violations of the United States Constitution within the very institution entrusted with its enforcement, and so invites cynicism respecting the jury's neutrality and its obligation to adhere to the law."). The Supreme Court further stated:

> A prosecutor's wrongful exclusion of a juror by a race-based peremptory challenge is a constitutional violation committed in open court at the outset of the proceedings. The overt wrong, often apparent to the

entire jury panel, casts doubt over the obligation of the parties, the jury, and indeed the court to adhere to the law throughout the trial of the cause. The *voir dire* phase of the trial represents the jurors' first introduction to the substantive factual and legal issues in a case. The influence of the *voir dire* process may persist through the whole course of the trial proceedings.

*Id.* (internal quotation marks and citation omitted).

To show actual prejudice, the petitioner would be required to put forth evidence as to whether there was a reasonable probability that a jury with a different racial composition would have reached a different verdict. *See Strickland*, 466 U.S. at 694. But the "consequences [of a structural error] . . . are necessarily unquantifiable and indeterminate," which would place an impossible burden on the petitioner. *Sullivan v. Louisiana*, 508 U.S. 275, 282 (1993). Requiring a petitioner to prove prejudice in such a situation would prevent structural errors, the most serious type of error, from forming the basis of an ineffective assistance of counsel claim. Thus, I would hold that prejudice must be presumed from defense counsel's failure to make a *Wheeler* motion in response to the State's discriminatory use of peremptory challenges.

## III

Because I would grant a conditional writ of habeas corpus requiring a new trial with a *Wheeler* (and *Batson*) compliant jury, I respectfully dissent.